**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BRIGITTE AKWEI, DONNA SIMS,
and JOE DREW *individually and on*
*behalf of all others similarly situated,*

|  |  |
|---|---|
| Plaintiff, | Case No.: |
|  | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| RECKITT BENCKISER LLC, |  |
| Defendant. |  |

---

Plaintiffs BRIGITTE AKWEI, DONNA SIMS and JOE DREW (collectively, "Plaintiffs")

individually and on behalf of all others similarly situated in New York, Illinois and Georgia, by

and through their undersigned counsel, hereby bring this Class Action Complaint against

Defendant, RECKITT BENCKISER LLC (hereinafter, "RECKITT BENCKISER" or

"Defendant"), and allege the following:

## NATURE OF THE ACTION

1.      An annual survey conducted from February 2010 to March 2014 of approximately

24,000 American adults revealed that 75 percent of American households used air freshener and

room deodorizers.[1]  Taking advantage of this demand, Defendant manufactures, markets and sells its Air Wick® aerosol room sprays with false and deceptive labels that misrepresent their actual inability to eliminate odors.

2.     As part of its extensive and comprehensive nationwide marketing campaign, Defendant actively promotes the capabilities of Air Wick® aerosol sprays, claiming on the front labels that this product "eliminates odors."  But Defendant's aerosol sprays cannot in fact eliminate odors. Instead, the Air Wick® aerosol sprays merely mask odors.  By making false, deceptive and misleading statements to consumers, Defendant has deceived millions of consumers into purchasing Air Wick® aerosol sprays.

3.     Plaintiffs and the Classes have purchased Air Wick® aerosol sprays in the fragrances listed below:

- Vanilla Indulgence
- Lavender & Chamomile
- Apple Cinnamon Medley
- Fresh Waters
- Magnolia & Cherry Blossom
- Freesia & Jasmine
- Hawai'i Exotic Papaya & Hibiscus Flower
- Any other Air Wick® aerosol room spray with "eliminates odors" on the front label (collectively, the "Products"; individually, the "Product")

4.     At all material times hereto, Plaintiffs and the Classes have been deceived into purchasing the Products, whose capabilities have been misrepresented by Defendant.  Plaintiffs and other consumers have been harmed by Defendant's unlawful fraud, which takes advantage of consumers' strong preference for products that actually remove unwanted odors rather than merely mask them.

_____

[1] http://www.statista.com/statistics/284914/usage-of-air-freshener-spray-and-room-deodorizers-in-the-us-trend/ (last accessed 8/7/17).

5.      As shown in **EXHIBIT A**, the claim that Air Wick® aerosol spray eliminates odors is central to Defendant's marketing strategy.  The claim is prominently displayed on the front labels of the Products, where it cannot be missed, as well as on Defendant's website. Defendant has unjustly profited in the lucrative market for odor-eliminating products by labeling its Products deceptively and selling them to consumers who sought to purchase products that can actually eliminate unwanted odors, such as smoke, food, mildew, bathroom, and pet odors.

6.      This lawsuit seeks redress for the deceptive manner in which Defendant has marketed and continues to market its Air Wick® aerosol sprays to the general public. Plaintiffs bring this proposed consumer class action individually and on behalf of all other persons similarly situated who, from the applicable limitations period up to and including the present (the "Class Period"), purchased Air Wick® aerosol sprays for consumption and not resale in New York, Illinois, and Georgia (the "Classes").

7.      Plaintiffs seek to secure, among other things, monetary damages, punitive damages, equitable and declaratory relief, injunctive relief, restitution, and alternative damages, for similarly situated purchasers, against Defendant, for (1) deceptive acts or practices in violation of New York General Business Law § 349 ("NY GBL § 349") and false advertising in violation of New York General Business Law § 350 ("NY GBL§ 350"), (2) deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.), (3) deceptive acts or practices in violation of the Georgia Fair Business Practices Act (O.C.G.A. § 10-1-390 *et seq*.), (4) Common Law Fraud, (5) Breach of Express Warranties, and (6) Unjust Enrichment

3

8.      In addition to damages, Plaintiffs are seeking an Order requiring Defendant to cease packaging, marketing and advertising its Air Wick® aerosol sprays with misleading claims about their odor eliminating capabilities.

9.      Plaintiffs expressly do not seek to enforce any state law requirements beyond those established by federal laws and regulations.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

11.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

12.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because they conduct substantial business in this District.  Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendant operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state.  Additionally, this court has personal jurisdiction over Defendant because its moving equipment and storage facilities are advertised, marketed, distributed, and sold throughout New York State.  Defendant engaged in the wrongdoing alleged in this Complaint throughout

4

New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff AKWEI*

14.     Plaintiff BRIGITTE AKWEI is, and at all times relevant hereto has been, a citizen of New York State and a resident of New York County. On July 11, 2017 Plaintiff AKWEI purchased an Air Wick® "Fresia & Jasmine"-scented aerosol spray for personal consumption within the State of New York, from a Super Foodtown located on 145th Street in Manhattan. The purchase price was $1.39 for a canister of "Fresh Waters"–scented room spray. Below is a picture of Plaintiff AKWEI's purchased Product:



15.    Plaintiff AKWEI was financially injured as a result of Defendant's deceptive conduct because she was attempting to purchase a product that was capable of eliminating odors, which meant that the Air Wick® Product she actually purchased was of no value to her, or much less value than the sum she paid.  At the time of purchase, Plaintiff AKWEI did not know that the Product was incapable of eliminating odor, and she would not have purchased it had she known that Defendant's "eliminates odors" representations were false.  Plaintiff AKWEI relied upon and was reasonably misled by Defendant's mischaracterization of its Products' capabilities. Plaintiff AKWEI suffered injury in fact and lost money as a result of Defendant's deceptive and misleading practices as described herein.  She was denied the benefit of her bargain because the Product did not have the advertised capability to eliminate odor as warranted by Defendant, and instead was an entirely different and less-valuable odor masking product.  However, Plaintiff

AKWEI would be willing to purchase the Products in the future if she is assured that Defendant is accurately representing their capabilities.

***Plaintiff SIMS***

16.    Plaintiff DONNA SIMS is, and at all times relevant hereto has been, a citizen of the State of Illinois and resides in Cook County. On September 14, 2016 Plaintiff SIMS purchased two Air Wick® aerosol sprays for personal consumption within the State of Illinois, from Mariano's located in Cook County. The purchase price was $0.99 for each canister of "Fresh Waters"–scented room spray. Below is a picture of Plaintiff SIMS's purchase:



17.    Plaintiff SIMS was financially injured as a result of Defendant's deceptive conduct because she was attempting to purchase a product that was capable of eliminating odors, which meant that the Air Wick® Products she actually purchased were of no value to her, or much less value than the sum she paid. At the time of purchase, Plaintiff SIMS did not know that the

Products were incapable of eliminating odor, and she would not have purchased them had she known that its "eliminates odors" representations were false. Plaintiff SIMS relied upon and was reasonably misled by Defendant's mischaracterization of its Products' capabilities. Plaintiff SIMS suffered injury in fact and lost money as a result of Defendant's deceptive, false, and misleading practices as described herein. She was denied the benefit of her bargain because the Product did not have the advertised capability to eliminate odor as warranted by Defendant, and instead was an entirely different and less-valuable odor masking product. However, Plaintiff SIMS would be willing to purchase the Products in the future if she is assured that Defendant is accurately representing their capabilities.

### Plaintiff DREW

18.     Plaintiff JOE DREW is, and at all times relevant hereto has been, a citizen of the State of Georgia and resides in Thomasville, Georgia. In mid or late March 2016, Plaintiff DREW purchased one Air Wick® aerosol spray for personal consumption within the State of Georgia, from a Dollar Tree located in Thomasville. The purchase price was $1.00 for a canister of "Lavender & Chamomile"–scented room spray.

19.     Plaintiff DREW was financially injured as a result of Defendant's deceptive conduct because he was attempting to purchase a product that was capable of eliminating odors, which meant that the Air Wick® Product he actually purchased was of no value to him, or much less value than the sum he paid. At the time of purchase, Plaintiff DREW did not know that the Product was incapable of eliminating odor, and he would not have purchased it had he known that its "eliminates odors" representation was false. Plaintiff DREW relied upon and was reasonably misled by Defendant's mischaracterization of its Products' capabilities. Plaintiff DREW suffered injury in fact and lost money as a result of Defendant's deceptive, false, and misleading practices

as described herein.  He was denied the benefit of his bargain because the Product did not have the advertised capability to eliminate odor as warranted by Defendant, and instead was an entirely different and less-valuable odor masking product.  However, Plaintiff DREW would be willing to purchase the Products in the future if he is assured that Defendant is accurately representing their capabilities.

*Defendant*

20.    Defendant RECKITT BENCKISER LLC is a corporation organized under the laws of Delaware.  Its headquarters and address for service of process is 399 Interpace Parkway, Parsippany NJ 07054-0225.

21.    Defendant RECKITT BENCKISER LLC is a privately held global manufacturer of household cleaning supplies and other consumer chemicals. It has operations in 72 countries and its brands are sold in over 110 countries.  In 2015, Defendant took in £8.874 billion in net revenue.[2]

22.    RECKITT BENCKISER develops, markets and sells a line of household air fresheners under the Air Wick® brand name throughout the United States.  The Products are available at grocery stores, hardware stores, convenience stores, drug stores and other retail outlets throughout the United States, including online retailers such as Amazon.com.

23.    RECKITT BENCKISER owns, manufactures and distributes Air Wick® aerosol products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising of the Air Wick® aerosol sprays at issue in this Complaint.  The product label for Air Wick® aerosol sprays, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents with the

"eliminates odors" misrepresentation alleged herein. The Product label was designed to encourage consumers to purchase Air Wick® aerosol sprays and reasonably misled Plaintiffs and the Classes into purchasing the Products.

24.    Plaintiffs allege that, at all times relevant herein, RECKITT BENCKISER's subsidiaries, affiliates, and other related entities, as well as its employees, were acting as its agents and/or servants, each acting within the purpose and scope of that agency and employment. Plaintiffs further allege on information and belief that, at all times relevant herein, the distributors who delivered and sold the Products, as well as their respective employees, also were RECKITT BENCKISER's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. In addition, Plaintiffs allege that, in committing the wrongful acts alleged herein, RECKITT BENCKISER, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that RECKITT BENCKISER participated in the making of such representations by disseminating those misrepresentations and/or causing them to be disseminated.

25.    Whenever reference in this Complaint is made to any act by RECKITT BENCKISER or its subsidiaries, affiliates, distributors, and other related entities, such reference shall be deemed to allege that the principals, officers, directors, employees, agents, and/or representatives of RECKITT BENCKISER committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of RECKITT BENCKISER while actively engaged in the scope of their duties.

---

[2] http://www.rb.com/media/1598/rb-annual-report-2015_final.pdf (last accessed 8/7/17).

## FACTUAL ALLEGATIONS

**Air Freshener Products**

26.    Air fresheners introduce fragrance into the air and are used to hide unpleasant-smelling odors.

27.    Air freshener products have grown into a huge business, with residential and commercial consumers. In 2011, the Wall Street Journal reported that air freshener sales reached an estimated $7.77 billion in 2010 and were forecasted by the market research firm Euromonitor International to continue to grow.[3] Air Wick® has been reported as the second most popular brand of air freshener, with a market share of 34.3%.[4]

28.    There are many different kinds of air freshener. The global air fresheners market is segmented into four categories: Aerosol Fresheners (e.g., spray cans), Electric Air Fresheners (e.g., plug-ins), Car Air Fresheners (e.g., car vent clips), and Other Air Fresheners Products (e.g., candles, oils, gels, beads).

29.    Aerosol air fresheners, including Defendant's, use a propellant and fragrance packaged under pressure in a sealed metal or glass container with a valve which is opened by pressing down a button which contains a spray nozzle – the actuator. When the container's valve is opened by pressing the actuator, fragrance is forced through the spray nozzle located inside the actuator to create a mist of droplets containing fragrance.

30.    Commonly, odors can be controlled by five methods:

- ▪  Absorption: Absorbents like zeolite, activated charcoal, or silica gel may be used to remove odors.

---

[3] http://www.wsj.com/articles/SB10001424052748704076804576180683371307932 (last accessed 8/7/17).
[4] http://www.statista.com/statistics/275375/us-households-most-used-brands-of-air-freshener-sprays-and-room-deodorizers/ (last accessed 8/7/17).

- ▪ Oxidation: ozone, hydrogen peroxide, peroxide; chlorine, chlorate other oxidizing agent can be used to oxidize and remove organic sources of odors from surfaces and, in the case of ozone, from the air as well.
- ▪ Air sanitizer: Odors caused by airborne bacterial activity can be removed by air sanitizer that inactivate bacteria.
- ▪ Surfactants and soaps.
- ▪ Masking: Overwhelming an odor with another odor by any of the means described above.

31.    Air fresheners can only mask odors by introducing new fragrances into the air to overpower the original unpleasant odors. They contain a number of different chemical agents such as fragrances, aerosol propellants, and solvents such as mineral oil or 2-butoxyethanol and other glycol ethers. These products "deodorize" smelly areas by spraying chemical-based fragrances into the air. However, this will only cover up odors and does not eliminate them. In fact, these solutions can even cause allergic or asthmatic reactions in those with sensitivities to the chemicals that have been introduced into an indoor environment.

32.    Thus, air fresheners do not address the root of the problem—the odor itself. Odors are caused by one or more volatilized chemical compounds that humans or other animals sense through olfaction. Odorous molecules act as a chemical stimulus; bringing awareness of the presence of airborne chemicals. Bacteria, allergens, dust mites, and other volatile organic compounds linger in the air and do not dissipate as a result of spraying air fresheners. At best, air freshener fragrances mix with noxious odor micro-particles to overwhelm/cover up problematic odors in human perception but fail to remove from the air the actual airborne particulates that give rise to odors.

33.    Only air purifiers can effectively remove airborne particulates and eliminate odors in the household. Unlike air fresheners, air purifiers actually remove odor inducing agents and other hazardous particles.

**Air Wick® Aerosol Sprays**

34.     Defendant's Air Wick® line of products includes scented oils, candles, scented wax melts, and aerosol air fresheners.

35.     Competing manufacturers of aerosol air fresheners acknowledge their limitations and do not promise more than they can deliver.  Rather than claiming to eliminate odors, they emphasize the pleasantness of their fragrances, implicitly acknowledging that they merely mask odors.  For example, Method® air freshener only promises to "fill your room with one of our nature-inspired scents."[5]  Pier 1 Imports® Citrus Cilantro room spray only offers a "lingering scent of lemon, lime and grapefruit mixed with fragrant cilantro, basil and rosemary."[6]  And Fornasetti flora-scented room spray only claims to "[f]ill your home with the beautifully luxurious Flora aroma from this natural room spray."[7]  These are all accurate characterizations of what air fresheners actually do.

36.     Defendant RECKIT BENCKISER, however, makes the much stronger claim that its Air Wick® air spray actually "eliminates odors."  This boast is prominently displayed on Air Wick® product labels, on Defendant's website, and wherever the Products are advertised.

37.     Defendant's representations are false, misleading and deceptive, however, because its Products have no odor-eliminating capabilities.

---

[5] http://methodhome.com/products/air-refresher-beach-sage-2-2/ (last accessed 8/7/17).
[6] http://www.pier1.com/citrus-cilantro%C2%AE-room-
spray/3051569.html?utm_source=Google&utm_medium
=PLA&utm_campaign=google_pla&s_cid=pla0000003&gclid=CjwKEAjwudW9BRDcrd30kov
f8GkSJAB3hTxFZgEaxPILImDaWTUC7tTuT1EbRZj9ub13ay3cnTdzMxoCvkbw_wcB&gclsrc
=aw.ds (last accessed 8/7/17).
[7] https://us.amara.com/products/scented-room-spray-flora (last accessed 8/7/17).

38.    The patents involved in the manufacture of Air Wick® products were thoroughly reviewed by expert chemist Steve Lerman of SIL Consulting.  *See* **EXHIBIT B**.  Mr. Lerman arrived at the following conclusions:

a.  "There is no indication that the Air Wick product in this case has any deodorizing capability when used as directed as an air freshener."
b.  "Any odor activity exhibited by this product appears to be limited solely to odor masking due to the presence of fragrances in the product."
c.  "We do not see any validity to Air Wick's claim that their product eliminates odors."

39.    The meaning of "eliminates" must be taken at face value.  In determining the meaning of the statements challenged herein, a court may reference dictionary definitions. *See Am. Italian Pasta Co. v. New World Pasta Co*., 371 F.3d 387, 391 (8th Cir. 2004) (referencing a dictionary definition of "favorite"). The Compact Oxford English Dictionary provides that the word "eliminate" means "[t]o expel, exclude, remove, get rid of."[8] The American Heritage Dictionary provides that the word "eliminate" means "to wipe out someone or something, especially by using drastic methods such as banishment or execution."[9] Thus, the word "eliminate" denotes a complete removal such that the word "complete" is unnecessary and repetitive.[10]

40.    "Eliminates odors" cannot be plausibly interpreted as just another way of referring to the introduction of pleasant fragrances that only mask odors.  The front labels of the Products all state "4 in 1," thus promising consumers <u>four</u> distinct benefits.  These are: 1) "PREMIUM FRAGRANCE," 2) "ELIMINATES ODORS," 3) "LASTS UP TO 1 HOUR," and 4) "ACTS IN SECONDS."  Below is a picture of the Product label:

---

[8] The Compact Oxford English Dictionary 141 (2d ed. 1989).
[9] The American Heritage Dictionary 580 (4th ed. 2000).



Thus, the "eliminates odors" benefit is represented to consumers as something distinct from, and in addition to, the "premium fragrance" benefit.  So "eliminates odors" cannot be construed as just a synonym for the fragrances introduced by the spray.  Were it just another term for the odor-masking effects of the fragrances, Defendant would be promising consumers <u>three</u> distinct benefits, not the four that it actually advertises.  Defendant thus stands convicted by logic alone, because *"eliminates odors" cannot be true unless "4 in 1" is false,* and vice versa.

**<u>Defendant's Fraud Was Material, Reliance-Inducing, And Would Deceive A Reasonable Consumer</u>**

41.    Defendant's deceptive representations are material because reasonable consumers care that a product actually eliminates odors rather than merely masking them with pleasant fragrances.  In addition to creating an unpleasant environment, noxious odors are often accompanied by airborne health hazards and allergens, including, but not limited to, pet dander,

---

[10] The Third Circuit addressed a similar factual scenario when an advertisement stated that a product could  "eliminate" a medical condition. *Belmont Labs., Inc. v. Fed. Trade Comm'n*, 103 F.2d 538, 540-41 (3d Cir. 1939).  When the evidence demonstrated that the product could only "alleviate" the condition for a period of time, the  advertisement was found to be false. *Id*.

smoke particles, mold spores, and bacteria. These are not eliminated by pleasant fragrances, which only mask their effects and may result in significant health risks in their own right.

42. This is a source of significant consumer concern. There is abundant evidence that American consumers are dissatisfied with air fresheners that merely mask odors and prefer products that actually eliminate them.[11] It is therefore unsurprising that Defendant wishes to misrepresent its Products to consumers as falling into the latter category.

43. Given that Defendant goes out of its way to misrepresent odor elimination as a distinct benefit of its Products, Plaintiffs' and other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed. The materiality of those misrepresentations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiffs and the Classes.

44. The presence of the "eliminates odors" statement on the Products' label is false, misleading and likely to deceive a reasonable consumer. Reasonable consumers, such as Plaintiffs and Class members, rationally expect that a product which claims to eliminate odors will perform as promised and do more than simply mask unpleasant odors.

45. Reasonable consumers (including Plaintiffs and the Classes) must and do rely on manufacturers of household products such as Defendant to honestly disclose their products' capabilities and limitations, and companies such as Defendant intend and know that consumers rely upon labeling statements in making their purchasing decisions. Such reliance by consumers is reasonable given that companies are legally prohibited from engaging in deceptive acts or practices in the conduct of any business, trade, or commerce. New York, Illinois, and Georgia

---

[11] *See* http://cleanmyspace.com/the-truth-about-air-fresheners/ (last accessed 8/7/17).

have placed requirements on companies that are designed to ensure that the claims they make about their products are truthful and accurate.

46.     Plaintiffs and the Classes relied on Defendant's representations because they would not have purchased its Products had they known that they could not function as promised. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were deceptively labeled, and would not have purchased the Products had they known they were incapable of eliminating odors.  Defendant intended that Plaintiffs and the Classes rely on its misrepresentations.

**Defendant Knew That Its Representations Were Deceptive**

47.     Defendant knew that it made the "eliminates odors" representation about its Air Wick® aerosol sprays, as the statement appears on the Products' packaging. Defendant also knew that the claim was false and misleading, because the Products cannot eliminate odor and only mask it.  Upon information and belief, Defendant retained expert chemists, scientists, regulatory compliance personnel, and attorneys, and thus had the ability to know, and did know, that Air Wick® aerosol sprays are incapable of eliminating odors.

48.     Defendant's awareness of the Products' limitations is shown by its response to one of the FAQs on the Product website, where it explains that "[f]ragrance longevity depends on how much product is sprayed, the area's ventilation, and the existence of odor in the air prior to using the product"[12]  (*see* **EXHIBIT A**).  Obviously, the Products do not eliminate prior odors if prior odors can reduce the longevity of their effects.

49.     Defendant's guilty intent is further proven by the marketing of another one of its products, Lysol®, which also claims to eliminate odors.  The back label of Defendant's Lysol®

---

[12] http://www.airwick.us/faqs/room-spray-faqs/#faq-3 (last accessed 8/7/17).

neutra air® sanitizing spray reads: "This product cleans your air of bacteria & their odors. **Unlike other air fresheners that only mask odors, this product eliminates tough odors** such as smoke, food, mold, mildew, bathroom, and pet odors. …Air so clean you can smell the freshness." (emphasis added). Below is a photo:



50.    Defendant's <u>own words</u> prove that it recognizes the distinction between actually eliminating odors and merely masking them, as it promotes this distinction in marketing its Lysol® product.  Lysol® lives up to its promise by actually destroying the air borne particles that cause odors.  Lysol® eliminates odors by "denaturing proteins," which "destroys the tertiary structure that gives the protein its three-dimensional shape," thereby killing the cell.[13]  Defendant therefore knows what is required to actually eliminate odors.  Yet Defendant represents its Air Wick® room sprays as having the same capabilities as Lysol® when it knows that they lack these

---

[13] https://www.reference.com/science/lysol-kill-bacteria-2ce58c185635fe6# (last accessed 8/7/17).

capabilities.  Defendant is correct that its Lysol® is different from "other air fresheners that only mask odors."  Unfortunately for Defendant, one of those air fresheners happens to be its own.

**Plaintiffs Were Injured As A Result of Defendant's Misrepresentations**

51.   Defendant's Product labeling is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic product packaging practice.  As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

52.   Plaintiffs were attracted to Air Wick® aerosol sprays because they preferred to use air fresheners capable of eliminating unpleasant odors. Plaintiffs believed that the Products would perform as promised by Defendant's packaging and marketing campaign. As a result, the Air Wick® aerosol spray, with its deceptive claims on its label, held little or no value to Plaintiffs, who were seeking to eliminate odors and not just mask them.

53.   Plaintiffs and the Classes (defined below) have been damaged by Defendant's deceptive and unfair conduct because they were induced to purchase a Product with false and deceptive labeling that held little or no value for them, given that the Product could not perform its advertised purpose.  They were thus deprived of the benefit of their bargain, receiving a product whose value was less than had been warranted by Defendant.

54.   Defendant's marketing of Lysol® is an acknowledgment that products that merely mask odors have less value than products that actually eliminate them.  Odor-elimination would not otherwise be a selling point for Lysol®.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs seek relief in their individual capacity and as representatives of all others similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following Classes:

i.      The New York Class
All persons who have made retail purchases in New York of Air Wick® aerosol sprays with "eliminates odors" claims on the front labels during the applicable limitations period, and/or such subClasses as the Court may deem appropriate.

ii.     The Illinois Class
All persons who have made retail purchases in Illinois of Air Wick® aerosol sprays with "eliminates odors" claims on the front labels during the applicable limitations period, and/or such subClasses as the Court may deem appropriate.

iii.    The Georgia Class
All persons who have made retail purchases in Georgia of Air Wick® aerosol sprays with "eliminates odors" claims on the front labels during the applicable limitations period, and/or such subClasses as the Court may deem appropriate.

(collectively, "the Classes")

56.     Excluded from the Classes are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

57.     Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

58.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59. **Numerosity:** Each Class is so numerous that individual joinder of all Class members is impracticable. The precise number of members of the Classes is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive nationwide distribution and sales network. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

60. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to Defendant's deceptive and misleading claim that Air Wick® aerosol spray "eliminates odors" because that claim was on the front of every Product canister. Furthermore, common questions of law or fact include:

    a.  whether Defendant engaged in a marketing practice intended to deceive consumers;

    b.  whether Defendant deprived Plaintiffs and Class members of the benefit of the bargain because the Product purchased had less value than what Defendant warranted;

    c.  whether Defendant deprived Plaintiffs and Class members of the benefit of the bargain because the Product they purchased could not perform its advertised function and thus held little or no value for them;

    d.  whether Defendant caused Plaintiffs and Class members to purchase a substance that was other than what was represented by Defendant;

e.    whether Defendant caused Plaintiffs and the other members of the Classes to purchase Products that are incapable of eliminating odors;

f.    whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

g.    whether Defendant should be barred from representing that Air Wick® aerosol spray "eliminates odors."

61.    Defendant engaged in a common course of conduct in contravention of the laws that Plaintiffs seek to enforce individually and on behalf of the Classes.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and importance, to the numerous common questions that predominate in this action. Moreover, the common questions will yield common answers.

62.    **Typicality:** Plaintiffs' claims are typical of those of other Class members because Plaintiffs and other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of Illinois and Georgia law, as well as of substantively similar consumer protection laws of the other 47 states and the District of Columbia. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in common injury to all members of the Classes. Plaintiffs' claims arise

from the same practices and course of conduct that give rise to the claims of other Class members are based on the same legal theories.

63. **Adequacy:** Plaintiffs will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Classes. Plaintiffs and Plaintiffs' counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

64. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if they could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the Class

members' claims, the Illinois and Georgia Classes will be easily managed by the Court and the parties in addition to the New York Class.

65.     **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

66.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are also met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

68.     Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
(Brought Individually and on Behalf of the New York Class).**

69.     Plaintiff AKWEI realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.     Plaintiff AKWEI brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

71.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

72.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

73.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products as capable of eliminating odors are unfair, deceptive and misleading and are in violation of the NY GBL § 349.

74.     The foregoing deceptive acts and practices were directed at consumers.

75.     Plaintiff AKWEI, on behalf of herself and all others similarly situated, respectfully seeks a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

76.     Plaintiff AKWEI is at risk of several types of future injury, each of which justifies the imposition of an injunction. First, Defendant manufactures a range of room deodorizing products.  Some, like those at issue in this Complaint, merely mask odors while others, like Lysol®, actually attack the airborne particles that give rise to odors (as discussed above).  Despite this important difference, they are all promoted in identical language, as capable of eliminating odors.  "Eliminating odors" therefore does not have a uniform meaning for Defendant.

Consequently, Plaintiff AKWEI and other Class members have no way of knowing what this term is supposed to denote. They are therefore at risk of purchasing RECKITT BENCKISER products that do not fulfill their reasonable expectations (whether this be an Airwick aerosol spray or another deodorizing product), causing the same type of economic injury described in this Complaint.

77. Second, Plaintiff AKWEI is no longer able to rely on Defendant's representations, regardless of whether they are true or false. Plaintiff AKWEI knows that the Products have been misbranded. She also knows that other air freshening mechanisms sold by RECKITT BENCKISER (like Lysol®) are not misbranded. But she cannot rely on Defendant's future representations absent a protective injunction.

78. Third, Plaintiff AKWEI will hesitate to purchase Products even if their formula is modified so as to actually eliminate odors. Even under these circumstances, Plaintiff AKWEI will be unable to take advantage of the Products because she has reasonably been led to believe that they are misbranded. Courts have acknowledged that this risk can warrant an injunction:

> [S]ome courts have focused on the particular nature of the injury at issue to find standing. They have found at least two injuries sufficient to establish standing where the plaintiff is aware of the misrepresentation: absent an injunction, the plaintiff-consumer will 1) no longer be able to confidently rely on the defendants' representations (*see Ries*, 287 F.R.D. at 533), and 2) refrain from purchasing products in the future even if they in fact conform to her expectations (*see Lilly v. Jamba Juice Company*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *3-5 (N.D. Cal. March 18, 2015).
>
> When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is unclear whether or not is true.

*Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist. LEXIS 41650 (N.D. Cal. Mar. 28, 2016).

79.     The Court should follow the lead of California Federal Courts and recognize that a plaintiff may be injured after she learns of a manufacturer's deception, even though she is unlikely to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise would immunize manufacturers and render injunctive relief impossible in consumer fraud class action lawsuits – if learning of a deception removed a Plaintiff's standing to seek an injunction, then wrongdoers could violate the law with impunity, defeating the purpose of consumer protection statutes.

## COUNT II

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
(Brought Individually and on Behalf of the New York Class).**

80.     Plaintiff AKWEI realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

81.     Plaintiff AKWEI brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

82.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful acts or practices, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the Court finds the defendants willfully or knowingly violated this section. The Court may award reasonable attorney's fees to a prevailing plaintiff.

83.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as capable of eliminating odors when they cannot.

84.     The practices employed by Defendants, whereby Defendants advertised, promoted, marketed, and sold their Products as capable of eliminating odors are unfair, deceptive and misleading and are in violation of the NY GBL § 349.

85.     The foregoing deceptive acts and practices were directed at consumers.

86.     Plaintiff AKWEI and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade practices. Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiff AKWEI and the other New York Class members suffered monetary losses from the purchase of the Products. In order for Plaintiff AKWEI and the Class members to be made whole, they must receive a refund equal to the difference between the value of the Product as advertised and the value of the Product as it actually is, to be determined through expert testimony at trial.

## COUNT III

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)
### (FALSE ADVERTISING)
### (Brought Individually and on Behalf of the New York Class).

87.     Plaintiff LAU realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

88.     Plaintiff AKWEI brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 350.

89.     Defendants have been and/or is engaged in the "conduct of...business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

90.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

91.    Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendants' material misrepresentations.

92.    Defendants have violated N.Y. Gen. Bus. Law § 350 because their misrepresentations regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

93.    Plaintiff AKWEI and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Products, Plaintiff AKWEI and Class members relied on the misrepresentations regarding the Products' capabilities. Those representations were false and/or misleading because the Products cannot eliminate odors. Had the New York Class known this, they would not have purchased their Products or paid as much for them.

94.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff AKWEI and Class members seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *et seq.*)**
**(Brought on Behalf of the Illinois Class)**

95.    Plaintiff SIMS realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

96.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") prohibits as a deceptive act or practice "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."  815 ILCS 505/2.

97.     815 ILCS 505/2 also provides that this includes "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" as described by the Illinois Uniform Deceptive Trade Practices Act.  815 ILCS 510/2.

98.     The Act provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."  A court has the discretion to "award actual economic damages or any other relief which the court deems proper."  815 ILCS 505/10a(a).  A court may also "grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."  815 ILCS 505/10a(c).

99.     A Plaintiff must allege five elements in order to state a claim under the Act: 1) a deceptive act or unfair practice occurred, 2) the defendant intended for plaintiff to rely on the deception, 3) the deception occurred in the course of conduct involving trade or commerce, 4) the plaintiff sustained actual damages, and 5) the damages were proximately caused by the defendant's deception.  *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

100.    Plaintiff SIMS's claim satisfies element 1 of the Act because Defendant engaged in a deceptive act when it represented that the Products, with no odor eliminating capability, would eliminate odors.

101.    Plaintiff SIMS's claim satisfies element 2 of the Act because Defendant intended that she believe that Air Wick® air spray eliminates odors and then purchase the Product in reliance on this belief.  After all, the claim is prominently displayed on the front label for a reason.

102.    Plaintiff SIMS's claim satisfies element 3 of the Act because the deception occurred in the context of a commercial transaction.  Plaintiff purchased the Products for $.99 a canister at a store.

103.    Plaintiff SIMS's claim satisfies element 4 of the Act because Plaintiff SIMS sustained actual damages when she paid money for a product that held no value for her, or substantially less value than the purchase price.  The Product was represented as capable of eliminating odors.  But it could not eliminate odors, and eliminating odors was the purpose for which she purchased it and the purpose for which it was advertised.  Plaintiff SIMS was thus deprived of the benefit of her bargain and suffered an actual loss of up to $0.99 for each of the two canisters of Product she purchased.

104.    *See Su Yeun Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010) ("In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'") (quoting *Mulligan v. QVC, Inc*., 888 N.E.2d 1190, 1197-98 (Ill. App. Ct. 2008)).

105.    Plaintiff SIMS's claim satisfies element 5 of the Act because Defendant's deception was the proximate cause of her damages.  Plaintiff SIMS would not have purchased the

Product had she known that it could not eliminate odors. Thus, it was only Defendant's representation that it could eliminate odors that caused her to purchase the Products and suffer the resultant injury.

106.    Accordingly, Plaintiff SIMS brings this claim under the Act on behalf of herself and the other members of the Illinois Class and requests: 1) monetary damages in the amount of a full refund of the purchase price, 2) punitive damages, 3) restitution for monies wrongfully obtained, 4) disgorgement of ill-gotten revenues, 4) declaratory relief, 5) injunctive relief enjoining Defendant from disseminating that its Product "eliminates odors," 6) reasonable attorneys' fees, and 7) any other relief deemed appropriate by the Court.

## COUNT V

### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (O.C.G.A. § 10-1-390 *et seq.*)
### (Brought on Behalf of the Georgia Class)

107.    Plaintiff DREW realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

108.    The Georgia Fair Business Practices Act ("FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). This includes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." O.C.G.A. § 10-1-393(b)(5).

109.    The FBPA provides that "[a]ny person who suffers injury or damages… as a result of consumer acts or practices in violation of this part… may bring an action individually, but not in a representative capacity, against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the

32

defendant; provided, however, exemplary damages shall be awarded only in cases of intentional violation." O.C.G.A. § 10-1-399(a).

110.    While the FBPA does not provide for class actions, the Supreme Court, the 11th Circuit, and other courts have all held that state law restrictions on the bringing of class actions do not apply in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.")

111.    The FBPA requires that a plaintiff have submitted a written demand for relief to defendant at least 30 days prior to the filing of any action "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." O.C.G.A. § 10-1-399(b).

112.    A written demand for relief was sent to Defendant at least 30 days prior to the filing of this action.  It was sent on November 21, 2016 and delivered on November 26, 2016 *See* **Exhibit C.**

113.    The FBPA provides that "a court shall award three times actual damages for an intentional violation."  O.C.G.A. § 10-1-399(c).

114.    The FBPA also provides that a person injured by a violation of the FBPA "shall, in addition to other relief provided for in this Code section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses of the litigation incurred in connection with said action." O.C.G.A. § 10-1-399(d).

115.    To prevail on an FBPA claim, a plaintiff must prove three elements: 1) a violation of the FBPA, 2) causation, and 3) injury. *Williams v. Jet One Jets, Inc.*, 755 F. Supp. 2d 1281, 1289 (N.D. Ga. 2010).

116.    Plaintiff DREW has pled element 1 because Defendant represented its Products as capable of eliminating odors when the Products are not capable of doing so, thereby representing that the Products have "characteristics, ingredients, uses, benefits, or quantities that they do not have." O.C.G.A. § 10-1-393(b)(5).

117.    Plaintiff DREW has pled element 3 because he was injured when Defendant's misrepresentations induced him to spend money on the Product, which could not perform the function for which it was advertised and for which he purchased it, and hence held no value for him.  Plaintiff DREW was thus deprived of the benefit of his bargain, suffering an actual loss of $1.00 for the canister of Product he purchased.

118.    Plaintiff Drew has pled element 2 because it was Defendant's misrepresentations that caused his injury.  He purchased the Product in reliance on Defendant's claim that it could eliminate odors and would not have purchased it had this claim not been made or had he known of its falsity.

119.    Maintaining a claim under the FBPA also requires that the "plaintiffs' claim must involve matters of public interest or concern." *Buckley v. Directv, Inc.*, 276 F. Supp. 2d 1271, 1274 (N.D. Ga. 2003).  Defendant's deceptive advertising and labeling of its Products is a matter

of public interest or concern because Defendant markets its Products to millions of Georgia residents and derives substantial revenues from sales of the Products in Georgia.

120.    Accordingly, Plaintiff DREW brings this claim under the Act on behalf of himself and the other members of the Georgia Class and requests: 1) monetary damages in the amount of a full refund of the purchase price, 2) exemplary damages, 3) restitution for monies wrongfully obtained, 4) disgorgement of ill-gotten revenues, 4) declaratory relief, 5) injunctive relief enjoining Defendant from disseminating that its Product "eliminates odors," 6) reasonable attorneys' fees, and 7) any other relief deemed appropriate by the Court.

## COUNT VI

### COMMON LAW FRAUD
### (Brought on Behalf of the New York, Illinois and Georgia Classes)

121.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

122.    Plaintiff AKWEI brings this claim individually as well as on behalf of the New York Class.  Plaintiff SIMS brings this claim individually as well as on behalf of the Illinois Class under Illinois law and Plaintiff DREW brings this claim individually as well as on behalf of the Georgia Class under Georgia law.

123.    Defendant made a false statement of material fact when it represented that the Products could eliminate odors.

124.    Defendant knew that this representation was false.

125.    Defendant intended that Plaintiffs and the Class rely on the alleged truth of this representation and they did rely on this alleged truth.  Had Defendant accurately represented the Products' actual capabilities, Plaintiffs and the Class would not have purchased them.

126.    Plaintiff and the Classes suffered damages as the result of such reliance.

127.    Accordingly, Defendant is liable to Plaintiffs and the Class for common law fraud.

## COUNT VII

**BREACH OF EXPRESS WARRANTIES**
**(Brought on Behalf of the Illinois and Georgia Classes)**

128.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

129.    Plaintiff SIMS brings this claim individually as well as on behalf of the Illinois Class under Illinois law and Plaintiff DREW brings this claim individually as well as on behalf of the Georgia Class under Georgia law.

130.    Defendant provided Plaintiffs and other Class members with the written express warranty that its Products could eliminate odors.  This "eliminates odors" claim is an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise, which was what induced Plaintiffs' and the Classes' purchasing decisions.

131.    Defendant breached the terms of this express warranty by not providing Products with the nature and quality it had warranted on the Products' labels and on its website.

132.    As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury. They purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain because they spent money on products that did not provide what had been promised and held no value for them.

133.    The Breach of Express Warranties pre-suit notice requirement does not apply to Plaintiff SIMS's Illinois claim if "the seller has actual knowledge of the defect of the particular

36

product." *In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007).  As alleged herein, Defendant was aware that its Products could not perform as advertised.  Likewise, the Breach of Express Warranties privity requirement does not apply to Plaintiff SIMS's Illinois claim because Defendant expressly warranted its goods to her and the Illinois Class (through the Products' labels) and this warranty was the basis of the bargain and was relied upon by Plaintiff SIMS and the Illinois Class. *See In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (agreeing with plaintiffs that "they are exempt from alleging privity because McDonald's expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.").

134.    Plaintiff DREW's Breach of Express Warranty claim satisfies Georgia's privity requirement because "[i]f the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist. *Lee v. Mylan Inc*., 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011).  Defendant expressly warranted to Plaintiff DREW and the Georgia Class "that the product will perform in a certain way" when it represented that the Products eliminate odors.

## COUNT VIII

### UNJUST ENRICHMENT
**(Brought on Behalf of the Illinois and Georgia Classes)**
**(Pleaded in the Alternative)**

135.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

136.    Plaintiff SIMS brings this claim individually as well as on behalf of the Illinois Class under Illinois law and Plaintiff DREW brings this claim individually as well as on behalf of the Georgia Class under Georgia law.

137.    Plaintiffs assert this claim in the alternative in the event that the Court concludes that Plaintiffs lack an adequate remedy at law.

138.    At all times relevant hereto, Defendant deceptively labeled, marketed, advertised that Air Wick® aerosol spray "eliminates odors" to Plaintiffs and the Classes.

139.    Plaintiffs and Class members reasonably relied on Defendant's representations and, in reasonable reliance thereon, purchased the Products.

140.    Plaintiffs and Class members conferred upon Defendant non-gratuitous payments for the Products that they would not have conferred absent Defendant's deceptive labeling, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and that reasonable consumers would have expected.

141.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of Defendant's Products by Plaintiffs and Class members.  The retention of these revenues under these circumstances is unjust and inequitable because Defendant misrepresented that Air Wick® aerosol spray "eliminates odors" when it does not.  This caused injuries to Plaintiffs and members of the Classes, who paid money for a product that could not perform its advertised function.

142.    Retention of the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Classes is unjust and inequitable under these circumstances. Thus, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

143.    Plaintiff SIMS's unjust enrichment claim is valid because it is accompanied by underlying common law and statutory claims.  *See In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) ("To the extent plaintiffs have stated claims for breach of express warranties, the unjust enrichment claims may stand.").

144.    Plaintiff DREW's unjust enrichment claim is valid despite the fact that the benefit he conferred on Defendant was indirect (through a retailer).  *See Terrill v. Electrolux Home Prods.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010) ("Electrolux has not cited a Georgia authority restricting unjust enrichment claims to direct benefits, and the Court has not found any through its own research.").  Plaintiff DREW's unjust enrichment claim is also compatible with his other claims.  *See Id.* at 1291 ("A plaintiff may plead inconsistent remedies, even if the plaintiff may not recover both.")

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    An Order that this action be maintained as a class action and appointing Plaintiff AKWEI as a representative of the New York Class, Plaintiff SIMS as a representative of the Illinois Class, and Plaintiff DREW as a representative of the Georgia Class;

b.    An Order appointing the undersigned attorney as counsel to all the Classes in this action;

c.    Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

    d.   All recoverable compensatory and other damages sustained by Plaintiffs and the Classes, in the maximum amount permitted by applicable law;

    e.   An order requiring Defendant to (i) immediately cease its deceptive business conduct as set forth in this Complaint; (ii) engage in a corrective advertising campaign; and (iii) reimburse Plaintiffs and all Class members the amounts paid for the Product;

    f.   Statutory pre-judgment and post-judgment interest on any amounts;

    g.   Payment of reasonable attorneys' fees and costs; and

    h.   Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: August 11, 2017

<div style="margin-left:40%">

Respectfully submitted,


*/s/ C.K. Lee*_____
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

</div>